## IN RE MARK C. ET AL.*
### (10774)

DUPONT, C. J., DALY and FOTI, Js.

Argued May 6—decision released July 14, 1992

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*George C. Heck,* for the appellant (respondent mother).

*Benjamin Zivyon,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Denise Lillo Vecchio,* assistant attorney general, for the appellee (petitioner).

*Susan M. Connolly,* for the minor children.

DALY, J. The respondent mother[1] appeals from the trial court's judgment terminating her parental rights pursuant to General Statutes § 17a-112 (b) (2) and (3).[2] The respondent claims (1) that the trial court improperly took judicial notice of the findings from the earlier neglect proceedings in this case and (2) that the trial court's decision was not supported by clear and convincing evidence as required by General Statutes § 17a-112. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The respondent was the mother of Mark C., born March 31, 1983, and Amy C., born July 2, 1984. In May, 1986,

---

[1] On May 3, 1991, the father of the children consented to the termination of his parental rights and is not a party to this appeal. We will refer to the respondent mother as the respondent.

[2] General Statutes § 17a-112 (b) provides in pertinent part: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year . . . (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. . . ."

the department of children and youth services (DCYS) received a report of physical abuse involving Mark. The respondent pleaded guilty to criminal charges involving this incident of physical abuse. The evidence at the termination hearing revealed that Mark's father actually abused the child but that the respondent falsely accepted responsibility for the incident. On July 29, 1986, petitions were filed by DCYS alleging that both children were neglected and uncared for by their parents. On December 16, 1986, the children were determined to be neglected because they were living in conditions deemed to be injurious to their health and well-being. The children were allowed to remain under the care and custody of the respondent subject to DCYS protective supervision. Both parents entered into a service agreement with DCYS concerning the children that was effective for a six month period. During this period, the father continued to abuse Mark physically. The parents' failure to comply with the service agreement resulted in both children's being committed to the custody and guardianship of DCYS for a period of eighteen months on January 26, 1988.

During November, 1988, the father was incarcerated and the respondent resumed temporary custody of both children. The respondent had complied with her service agreement during the period preceding this reunification with her children. On January 19, 1989, the commissioner obtained a court order preventing the father from contacting or residing with his children upon his release from jail. During April, 1989, the commissioner discovered that the father was making contact with the children in violation of the court order and sought to have the father held in contempt for his violation of the January restraining order. On June 1, 1989, Susan Wax, the DCYS social worker overseeing this case, found the father in the respondent's apartment alone with the children. Both children told their

therapists that their father was staying with them during the period that the restraining order was in effect. The children were removed from the respondent's home and placed in a foster home. The children remained in foster care from that time until the present.

On December 17, 1990, the commissioner sought to terminate both parents' parental rights as to Mark and Amy. The trial court found that there was clear and convincing evidence establishing that the respondent had failed to rehabilitate herself and would not be able to resume a responsible role in the lives of the children pursuant to General Statutes § 17a-112 (b) (2). The court further found that there was clear and convincing evidence to support the termination of her parental rights. General Statutes § 17a-112 (b) (3). The court ruled that the respondent's acts of omission deprived the children of the care necessary for their physical and emotional well-being. After finding that the statutory grounds for termination were satisfied, the court applied the statutory factors set forth in General Statutes § 17a-112 (d).[3] The court held that it was in the children's best interests to terminate the respondent's parental rights. The respondent appealed from that decision.

---

[3] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the

I

The respondent claims that the trial court improperly took judicial notice of decisions and findings related to the earlier neglect proceedings. The respondent argues that such judicial notice resulted in the imposition of a lower standard of proof in the parental termination phase. The respondent did not object to the court's decision to take judicial notice of the earlier proceedings and now argues that the court's taking judicial notice constituted plain error. We reject the respondent's argument.

The following facts are pertinent to the resolution of this claim. The commissioner requested that the court take judicial notice of certain items in the court file involving earlier proceedings in this case. The court asked the respondent's counsel and the counsel representing the children whether they had any objections to the commissioner's request. The respondent's counsel voiced a concern only about the meaning of one of the orders in the file. After clarification of that order, the respondent's counsel did not raise any other objection to this request. Counsel for the children did not object to this request. The court then took judicial notice of the record of the earlier proceedings. The commissioner's written motion requested that the court take judicial notice of all past proceedings in this case as well as all documents contained in the court file. In its extensive written memorandum of decision, the court noted

extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

that its factual findings derived from the court file of which it took judicial notice. The respondent failed to request that the trial court articulate exactly how it used the contents of the judicially noticed material.

A claim not raised at trial is generally not reviewable by this court on appeal. *In re Jonathan P.*, 23 Conn. App. 207, 211, 579 A.2d 587 (1990). Although Practice Book § 4185[4] allows a reviewing court to review alleged errors not raised at trial, "[i]t is only in rare cases that this exception to the requirement for seasonable assertion of claims in the trial court may be invoked." *Ralto Developers, Inc.* v. *Environmental Impact Commission*, 220 Conn. 54, 59, 594 A.2d 981 (1991). " 'Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " Id., quoting *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

"Judicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed." *State* v. *Tomanelli*, 153 Conn. 365, 368, 216 A.2d 625 (1966). Judicial notice relieves a party only of having to offer proof on the matter; it does not constitute conclusive proof of the matter nor is the opposing party prevented from offering evidence disputing the matter established by judicial notice. Id., 369. Here, the commissioner offered independent evidence from witnesses who were involved in the earlier proceedings to support the finding of neglect as well as the need to terminate the respondent's parental right. The respondent never attempted to dispute any

---

[4] Practice Book § 4185 provides in pertinent part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interest of justice notice plain error not brought to the attention of the trial court."

of the documents that were admitted pursuant to the taking of judicial notice of the earlier proceedings.

The trial court has the power to take judicial notice of court files of other actions between the same parties. *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 591, 409 A.2d 1029 (1979). "[T]his does not mean that it might use every statement it found in the papers constituting the file with the same effect as though the facts were in evidence before it." *German* v. *German,* 125 Conn. 84, 89, 3 A.2d 849 (1938). It would be improper for the trial court to base its decision terminating the respondent's parental rights solely on findings from the earlier proceedings that were judicially noticed by the court. Here, the court merely took into consideration the evidence from the earlier proceedings in determining whether the commissioner presented clear and convincing evidence justifying the termination of parental rights. The respondent was given an opportunity to object to the court's taking of judicial notice but did not object.

The respondent appears to argue that because the trial court took judicial notice of the court file in this case it terminated her parental rights under the preponderance of the evidence standard instead of the clear and convincing evidence standard. The earlier proceedings concerning the neglect determination by the court required proof by only a preponderance of the evidence to remove the children from the respondent's care and custody. See *In re Juvenile Appeal (84-AB),* 192 Conn. 254, 267 n.13, 471 A.2d 1380 (1984). The respondent raises a general allegation that the taking of judicial notice of the earlier proceedings tainted the parental termination decision. The respondent fails to point to any particular aspect of the court's ruling to show that it applied the lesser evidentiary standard. The court, in its memorandum of decision, refers only to the clear and convincing evidence standard. The respondent did

not show any judicially noticed facts that were used by the trial court in its decision to terminate her parental rights. The reports, such as the social study and evaluations from the earlier proceedings, were prepared by persons who appeared as witnesses in the parental termination phase. The respondent fails to point to any factual finding by the court necessary to the termination of her parental rights that was based solely on the judicially noticed facts. During a parental termination hearing, the trial court may rely on evidence used to establish a finding of neglect as long as that evidence is considered under the clear and convincing evidence standard. Id. The trial court properly reviewed all the evidence under the clear and convincing evidence standard. The respondent has failed to establish that the trial court terminated her parental rights solely on the basis of the finding of neglect in the earlier proceedings. The trial court's taking of judicial notice of the earlier proceedings did not constitute plain error.

## II

The respondent next claims that there was insufficient evidence to support the termination of her parental rights. We disagree.

This court must determine whether the trial court's judgment was supported by the facts and was legally correct. *In re Joshua Z.*, 26 Conn. App. 58, 64, 597 A.2d 842, cert. denied, 221 Conn. 901, 600 A.2d 1028 (1991). This court will not assess the witness' credibility nor will it retry the case. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986).

The respondent bases this claim on the fact that the evidence indicated that the father of the children committed all the acts of physical and sexual abuse. While

the respondent may have been victimized by her abusive husband, she is not relieved of her responsibilities to her children.

The respondent's therapist testified that the respondent attended counseling sessions sporadically over a three year period. The respondent tended to appear regularly during the periods of her husband's incarceration. The therapist felt that the respondent promoted her own needs rather than those of her children. The respondent appeared unwilling to discuss important personal topics related to her problems with caring for her children. The therapist testified that the respondent would be unable to care for her children by herself.

The court-appointed psychiatrist also agreed that the respondent was unable to provide the necessary care for her children. He felt that there was no realistic hope of the respondent's improving enough to care for her children in the near future. The psychiatrist did not believe that the respondent's present male companion would provide enough support to enable the respondent, even with the assistance of DCYS employees, to provide the necessary care and support for her children. Both the psychiatrist and court-appointed psychologist believed that the father would pose a threat to the children upon his release from incarceration if they were returned to the respondent. There was also evidence presented that the children need a permanent and stable environment. The children were approaching a critical age for adoption and delay would have a negative effect on their adoptability.

On the basis of all the evidence and testimony presented, there was clear and convincing evidence to support the termination of the respondent's parental rights. The trial court's decision was legally correct and factually supported.

The judgment is affirmed.

In this opinion the other judges concurred.