[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
NATURE OF PROCEEDINGS
Shelly Ann M. was born in the Hartford Hospital on December 26, 1993. Almost immediately after the birth of the child, the mother Joanne M. verbalized her intention to give the child up for adoptive placement. On the following day, Nydia Orozco-Davila, a clinical social worker in the obstetric service at Hartford Hospital, interviewed the mother and determined from her and from the father Robert S. that each of them was of the firm conviction that the child should be placed in adoption. The social worker gave the parents, in writing, the phone number for the Department of Children and Families as well as her own telephone number. The mother Joanne M. confirmed that she had had no prenatal care during the pregnancy. The mother further indicated that she did not wish to engage in preadoptive counseling and indicated "I have already thought this through and this is what I feel is best." Shortly thereafter, but on the same day December 27, 1993, Joanne M. and Robert S., father of the child, left the hospital and have not been seen or heard from since. It CT Page 1326 should be noted that prior to leaving the hospital the parents did sign a permission for the Department of Children and Families to place Shelly Ann in foster care. The address that the parents provided at the hospital for their home address is a nonexistent address. The parents have not made any contact with the Department of Children and Families or the Hartford Hospital since leaving the hospital on December 27, 1993. The child tested positive for cocaine in her system.
Upon the parents departing from the hospital the Department of Children and Families was contacted by a representative of Hartford Hospital. On January 3, 1994, eight days following the birth of the child, the Commissioner of the Department of Children and Families filed a coterminous petition relating to the child alleging neglect pursuant to 46b-129 and also alleging that the parents had abandoned the child and, therefore, that their parental rights should be terminated pursuant to17a-112(b)(1). The Department of Children and Families arranged for a foster placement of the child.
Simultaneously with filing the coterminous petition, the Department of Children and Families through Natalia Alexandre, filed an affidavit regarding diligent search for the parent. The affidavit indicates that the whereabouts of the parents are unknown despite a diligent search by the Department of Children and Families, and that the case worker obtained addresses from the Hartford Hospital, the Department of Social Services and the Hartford Police Department. The affidavit further indicates that all three addresses obtained from various sources, were nonexistent and that the whereabouts of the mother remained unknown. Accordingly, pursuant to 45a-716 (c) an order of notice was made for publication in the Hartford Courant. The publication was duly made on January 12, 1994 indicating that a hearing would be conducted on the petition on the 27th day of January 1994 at 11:00 am at the Superior Court for Juvenile Matters in Hartford. The published notice indicated that the respondents had the right to counsel, and that if they were unable to pay for counsel, the court would provide an attorney for them. On January 27, 1994 a hearing was held on the matter and the parents both failed to appear at the appointed time and place. CT Page 1327
The court received testimony from Nydia Orozco-Davila the clinical social worker from Hartford Hospital, Natalia Alexandre the social worker from the Department of Children and Families and Carin D. Howard a social worker who had prepared a social study for termination of parental rights.
PROCEDURE
The court must first determine, as of the date of petition, whether the child has been neglected or was uncared for. If an adjudication is made regarding the neglect or uncared for petition, the court must then consider whether any ground has been established by clear and convincing evidence for termination of parental rights. If the court finds that a ground exists for termination of parental rights, the court must then consider whether to do so would be in the child's best interest as of the date of trial. Finally, if the court determines that it is in the best interest of the child a statutory parent must be appointed in order to allow the child to be placed in adoption.
As a threshold matter, in a case involving nonappearing parents the court must first determine whether the petitioner has made reasonable efforts to locate the parents and, if so, thereafter determine whether it is appropriate to appoint counsel for the nonappearing parents.
The court first heard testimony from Natalia Alexandre the social worker from the Department of Children and Families who was first involved with this case. This case worker indicated that she obtained from the Hartford Hospital the address of 99 Capital Avenue which had been provided by the parents as their home address. Natalia Alexandre went to that address and found that no such address existed. She thereafter contacted the Department of Social Services who provided her with a 1992 address at 219 Sisson Avenue, Apartment 2B, in Hartford. Natalia Alexandre attempted to find such an address and determined that it did not exist. Thereafter, the social worker contacted the Hartford Police Department and determined that mother, Joanne M., had a police record with an address of 1240 Park Street in Hartford, Natalia Alexandre determined that that address did not exist. The court CT Page 1328 concludes that the social worker made reasonable efforts to locate the parents and those efforts were unsuccessful.
With respect to the appointment of counsel, some reference should be made to other evidence and material that was judicially noticed by the court. Pursuant to the authority of In re Mark C., 28 Conn. App. 247 (1992), the petitioner requested that the court take judicial notice of its earlier proceedings regarding this family in the matter of Baby Girl M., A.K.A. Elizabeth M., a sibling of Shelly Ann M. Court appointed counsel for Shelly Ann M. joined in the request that the court take judicial notice of the earlier proceedings with respect to the other child of Joanne M. and Robert S.
The court file indicates that a year and a half earlier, on August 5, 1992 another child, Elizabeth M., was born to Joanne M. and Robert S. That child was also left at St. Francis Hospital and the parents had similarly departed the hospital giving the Department of Children and Families a fictitious address. The attempts to locate the respondents was unsuccessful, and on August 11th of 1992 an order of temporary custody was obtained on behalf of Elizabeth M. The parents' rights were subsequently terminated, and Elizabeth M. was successfully placed in adoption.
The court is not unmindful of the concern expressed by the Supreme Court in the matter of Baby B., 224 Conn. 263,297, at Footnote 22, wherein the Supreme Court has indicated that the trial court should seriously consider the appointment of legal counsel for nonappearing parents in termination of parental rights cases. In that footnote, the Supreme Court indicated that if counsel were appointed, that counsel might hypothetically seek additional time to determine the address of the parents and "to determine their wishes". In the case before the court now, the court has received credible testimony from the clinical social worker at the hospital that both of the parents expressed a declared intention for the child to be placed in adoption. The court accordingly finds that in this case, where the parents have expressed their wishes to have the child placed in adoption, have deliberately misled the authorities with respect to their place of residence and have failed to in any way communicate with either the CT Page 1329 hospital or the Department of Children and Families that the appointment of counsel would serve no useful purpose, especially given their prior history of similar conduct.
ADJUDICATION
Based upon the testimony presented, the exhibits offered in evidence and the matters judicially noticed, the court finds that Shelly Ann M. has been neglected in that she has been abandoned, as was her sister Elizabeth M., and that she is uncared for in that she is homeless, there being no known home.
Having concluded that the child has been neglected and uncared for, the court addresses the issue of termination of parental rights. The basis of the termination petition is on the alleged ground that the child has been abandoned by the parents in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. The focus of the court's attention should be on the parent's conduct In re Michael M., 29 Conn. App. 112, 121 (1992). It is clear from the statements made by the parents at the time they left the hospital that they had no intention of raising this child and that their declared goal was to have the child adopted. The court concludes that there was a settled purpose to forego their obligations and duties to the child In re Juvenile Appeal, 187 Conn. 431, 441 (1982).
Section 17a-112 of the General Statutes was amended in 1993 by Public Act 93-193 to add certain language to the statute, inter alia, regarding abandonment of a child. Subsection C provides:
 The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of circumstance surrounding the child that such a waiver is necessary to promote the best interest of the child. Abandonment of a child under the age of six months shall constitute prima facie evidence that a waiver is necessary to promote the best interest of the child provided (1) the parent has neither had nor initiated contact with the child or the guardian or caretaker of the CT Page 1330 child for at least 60 consecutive days and (2) the whereabouts of the parent are unknown, despite a diligent search for the parent by the Department of Children and Youth Services. The department shall file an affidavit indicating the efforts used to locate the parent.
The court has already indicated that the Department of Children and Families has made a diligent effort to find and locate the parents. This petition was brought within 60 days of the child's birth, the default trial was conducted within 60 days of the child's birth and, accordingly, 60 consecutive days of no parental contact has not expired prior to the date of hearing. Therefore, the new language of the amended statute does not apply. This court concludes that the language regarding prima facie evidence of abandonment supplements the language contained in the first sentence which provides that the court may waive the one year period if it finds from the totality of the circumstances surrounding the child, that such a waiver is necessary to promote the best interest of the child. This court further concludes that given the history of these parents with their prior child, and their declared intentions to place this child for adoption, and further given the desirability of permanency planning with respect to this child, that a waiver of the one year requirement is necessary to promote the best interest of the child.
Pursuant to 17a-112 the court is required to consider and make written findings as follows:
(1) No services could be implemented in this case due to the fact that the parents could not be located and have never contacted the Department of Children and Families to inquire as to their child's well being.
(2) Reasonable efforts to reunite the family as required by the Federal Child Welfare Act of 1980 were impossible since the parents could not be located.
(3) No orders were ever entered to establish expectations for the parents since the parents could not be located.
(4) With respect to the emotional ties and feelings CT Page 1331 of the child with respect to its parents the court finds that mother has never seen or had any physical contact with the baby outside of delivery. The father has, likely, never seen or had any contact with the baby. Both parents abandoned the child within 48 hours of birth. Thus, the child has no feelings or emotional ties to either parent.
(5) The child was born on December 26, 1993 and was thirty days old at the time of the court hearing. The child is considered generally healthy and is adoptable. Permanency planning, i.e. adoption, is in the child's best interest to provide for the emotional, physical, spiritual and educational needs of the child.
(6) The parents have made no known efforts to adjust their circumstances, conduct or conditions with a view toward reunification. The parents indicated in the hospital that they believed that adoption was appropriate and left the hospital without their child and they have made no contact with the Department of Children and Families since that time.
(7) The parents have not been prevented from maintaining or establishing a relationship with their child by any person or agency. There is no indication that economic circumstances have prevented the parents from having a meaningful relationship with the child.
DISPOSITION
Having considered all of the statutory factors and based upon the evidence presented in court it is found by clear and convincing evidence to be in the best interest of the minor child to have her parental rights terminated so that she may be placed forthwith in a permanent home by means of adoption.
Because it is found by clear and convincing evidence to be in the best interest of Shelly Ann M. to be placed forthwith into permanent adoption, it is Ordered that the parental rights of Joanne M. and Robert S., be, and they hereby are, terminated. And it is further ordered that the Commissioner of the Department of Children and Families be appointed statutory parent which includes all of the rights and responsibilities of guardianship. To secure that end CT Page 1332 it is further ordered that such Commissioner shall submit no later than 90 days from the date of this judgment a report in writing as to the progress towards such adoption and thereafter at such intervals and in such form the as the court may from time to time require.
The court specifically finds that the parenting education program which became effective January 1, 1994 (Public Act 93-319) is inappropriate given the factual situation of this case. Accordingly, the court finds that it is not necessary for the parents to attend a parenting education program.
Foley, J.