[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These proceedings began with a petition and Motion for Order of Temporary Custody (hereinafter "OTC") filed on behalf of each of the above referenced children, by the Department of Children and Families (hereinafter "The Department") on July 7, 1999. The petitions allege that CT Page 12318 the children were being neglected in that they were being denied proper care and attention, physically, educationally, emotionally or morally, and being permitted to live under conditions, circumstances or associations injurious to their well-being.
The Department was granted temporary custody of all four (4) children and temporary custody was confirmed, by agreement, on Maria, Edward and Jayson on July 16, 1999. The father of Nila objected to the OTC on his child and a contested hearing was held before Judge Quinn on July 22, 1999, after which the order of temporary custody was sustained. Judge Quinn ordered that "a transcript [of the hearing] be made for further use as it may become necessary, and that it may then also be made available to counsel.
On December 13, 1999 counsel for the Department orally moved to have the transcript from the OTC hearing be admitted in the upcoming trial on the underlying petition of neglect. The Court granted the Department's motion over the objection of counsel for Mr. L., father of Nila. On February 4, 2000, the first day of trial, a Motion for Reargument, filed by counsel for Mr. L., was argued by counsel. Mr. L.'s counsel also moved for a mistrial and for recusal.[1] The Court ordered that briefs be filed, and scheduled the matter for reargument. On March 27, 2000 counsel again argued the issues and the Court took judicial notice of the transcripts and exhibits from the OTC hearing; denied the motion of mistrial; and denied the motion for recusal.
The trial on the neglect petitions on all four (4) children, began on July 10, 2000. Petitioner's exhibits numbered one (1) through four (4), and child's exhibit A had been previously offered at the OTC hearing. On July 10, 2000 the transcript dated July 22, 1999 at 11:36 a.m. was marked as Petitioner's exhibit 5; the second transcript dated July 22, 1999 was marked as Petitioner's exhibit six (6); and the transcript of the Decision of the Honorable Barbara M. Quinn was marked as Petitioner's exhibit seven (7). The Department then argued, moved for adjudication, and rested without presenting any witnesses or further evidence. Mr. L. moved to dismiss without requesting to cross-examine any witnesses which the Department had made available, or presenting any witnesses or evidence, on the grounds that the Court could not make an adjudication based solely on judicially noticed findings and facts from the OTC hearing.
JUDICIAL NOTICE
The first issue to be resolved is whether the court may rely solely on the evidence from the OTC hearing to make an adjudication in the neglect trial. In re Mark C., 28 Conn. App. 247, 254, 610 A.2d 181, cert. CT Page 12319 denied, 223 Conn. 922, 614 A.2d 823 (1992), addresses whether the trial court's taking judicial notice of findings from an earlier neglect hearing in a subsequent termination of parental rights hearing constitutes plain error. In that case, the respondent mother appealed from the trial court judgment terminating her parental rights. In re MarkC., supra. On appeal, the respondent claimed that the trial court improperly took judicial notice of decisions and findings from the earlier neglect proceeding. The respondent argued that taking judicial notice of the facts from the neglect proceeding, where the standard of proof is preponderance of the evidence, resulted in the imposition of a lower standard of proof in the termination of parental rights hearing, where the standard of proof is that of clear and convincing evidence. The Appellate Court held that the trial court's taking judicial notice of the facts from the neglect hearing did not constitute plain error because the trial court properly reviewed all the evidence under the clear and convincing standard when determining whether respondent's parental rights should be terminated and because the respondent failed to establish that the trial court terminated her parental rights based solely on the neglect finding in the earlier proceeding.
The rule of law from In re Mark C., supra, is that the trial court cannot base a decision to terminate parental rights solely on judicially noticed findings from the neglect proceeding but may rely on such evidence when viewed under the clear and convincing evidence standard of proof required to terminate parental rights while also basing its decision on additional evidence concerning disposition. "It would be improper for the trial court to base its decision terminating the respondent's parental rights solely on findings from the earlier proceedings that were judicially noticed by the court." Id., 253. "During a parental termination hearing, the trial court may rely on evidence used to establish a finding of neglect as long as that evidence is considered under the clear and convincing evidence standard." Id., 254.
Courts considering termination of parental rights petitions have relied on In re Mark C. when taking judicial notice of the file or the findings from an earlier proceeding. See e.g., In re Antonio M.,, 56 Conn. App. 523,536, 744 A.2d 915 (2000), affirming the trial court's judgment terminating the respondent's parental rights, noting that the trial court considered all the evidence presented at the temporary custody hearing at the neglect trial, and then went on to determine by a fair preponderance of the evidence that the children had been neglected and that the commissioner had proven the statutory ground for termination by clear and convincing evidence. Also see In re Devon U., Hartford Superior Court for Juvenile Matters (January 19, 1999, Keller, J.), judicial notice of notations contained in memoranda of hearings; In re Maria and Jasmin B., Hartford Superior Court for Juvenile Matters (December 22, 1999, Keller,CT Page 12320J.), judicial notice of the prior neglect adjudication; In re SaprenaT., Danbury Superior Court for Juvenile Matters (January 22, 1993,Petroni, J.). Appellate court cases cite In re Mark C. when upholding the trial court's taking judicial notice of court files of other actions between the same parties. See, e.g., Lowe v. Lowe, 47 Conn. App. 354,360, 704 A.2d 236 (1997).
There is no reported case similar to In re Mark C., or to the instant case where a respondent objects to the trial court's taking judicial notice of the prior proceedings and refuses to put on evidence opposing the adjudication on the ground that the action should be dismissed because the court cannot make an adjudication based solely on findings that have been judicially noticed.
It is submitted that In re Mark C., supra, 28 Conn. App. 247, is procedurally different from the present case and, therefore, not dispositive on the issue before this Court. In re Mark C. addresses the propriety of the trial court's taking judicial notice of findings from a neglect hearing that has a fair preponderance of the evidence standard of proof to make an adjudication in a parental rights termination hearing that has a higher standard of proof requiring clear and convincing evidence. Unlike In re Mark C., the present case involves the court's taking judicial notice of facts and findings from the order of temporary custody hearing that has a fair preponderance of the evidence standard of proof[2] to be used in making an adjudication of neglect that has the same standard of proof.[3] Because the OTC and neglect hearings have the same evidentiary standards of proof, and the judicially noticed information is being used for adjudicatory purposes, it is submitted thatIn re Mark C. does not preclude the court from making an adjudication in the present case based on the judicially noticed findings in the court file and OTC hearing.
Moreover, the termination of parental rights affects fundamental rights recognized under the United States Constitution, which are not implicated by an OTC or neglect proceeding. In In re Juvenile Appeal (83-CD), supra, 189 Conn. 297, the court examined the reasoning in Santosky v.Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982), and concluded that the higher standard of clear and convincing evidence required in a termination proceeding is not required in a temporary custody proceeding because "(1) the nature of the private interests concerned in the two kinds of hearings differs, and (2) the deprivation of rights in a temporary custody adjudication is neither final nor irrevocable." Based on the different standards of proof applicable to the OTC and neglect hearings versus the termination hearing and the different degrees to which parental rights are affected by the court's findings in the different proceedings, it is submitted that In re Mark C. is not CT Page 12321 controlling on whether it would be improper for the trial court to make an adjudication on a neglect petition based on judicially noticed findings from the OTC hearing, at which the respondent father was present, represented by the same counsel, and had the opportunity to cross-examine the witnesses against him and to present evidence.
In the present case, the Department indicated that it had no further questions of the witness who testified at the OTC hearing and indicated that certain witness were available for cross-examination by the respondent, if they wished. The fact that the respondent chose not to cross-examine the witnesses again or put on a defense does not preclude the court from making an adjudication in that the respondent could have objected to the court's taking of judicial notice to preserve the record for appeal and still have put on a defense.
For all of the reasons stated herein, this Court properly took judicial notice of the transcripts and exhibits from the OTC hearing held on July 2, 1999.
ADJUDICATION
The petitions filed on each child on July 7, 1999, allege that said child was neglected in that he/she was being denied proper care and attention, physically, educationally, emotionally or morally; and was being permitted to live under injurious conditions, circumstances or associations. Jurisdictional facts stated are that mother has allowed the children to be exposed to chronic domestic violence; mother has been unable to protect her children from an abusive partner and has allowed inappropriate physical discipline; mother is unable to meet the basic daily needs of her children; and father, Charles L. has perpetrated chronic, severe domestic violence against mother in the presence of the children.
In order for this Court to adjudicate the children as neglected, this Court must be convinced by a fair preponderance of the evidence that the children have been neglected as of the date petitions were filed or last amended . . . In re Juvenile Appeal (84-AB), 192 Conn. 254, 263,471 A.2d 1380 (1984); Conn. Practice Book Sec. 1043, as amended.
The evidence before this Court reveals a pattern of physical, emotional and psychological abuse perpetrated by Charles L. on the mother and all of the children. Statements were made by the mother which were consistent and reported in detail; and statements that the children made were corroborated by mother's statements made at different times and to different individuals. Mother reported to the police as well as to the DCF social worker that Charles L., in approximately May of 1998, choked CT Page 12322 her in the kitchen of their home, in the presence of the children who reported the incident to someone at school. Mother reported an incident of being punched in the face by Mr. L. causing swelling and a broken tooth, and further, not being allowed to seek medical attention or call the police. Mother reported numerous occasions of being threatened with physical violence, threatened with having her children taken from her, threats of violence against her family, being demeaned and cursed at in front of the children, being denied food, being restrained from leaving Mr. L.'s presence. Mother further reported that the children, particularly Edward, were made to stay for long periods of time in a "push up position" as punishment. Mr. L. admitted to using this form of punishment, although he settled eventually on one (1) minute as the length of time he required the position to be maintained. This form of punishment, as described, is cruel and unacceptable. It was reported that Mr. L. pushed one (1) year old Nila down on the couch to stop her from crying; and has hit Jayson on his leg hard enough to leave a hand print, when he messed on himself during the time he was being potty trained. Mother has had to flee to the safety of a domestic violence shelter only to end up back in the company of Charles L. in debilitating fear for her safety and the safety of her children.
Maria related to Ms. Shelat, social worker for the children while at the safe house, that her dad, Charles L. made them get into a push up position when they were "bad" and that it hurt their wrists a lot; that they were not allowed to cry and if they did "then we would get hurt". Maria also stated that they would be left alone at home and would "have to be real quite so nobody would know that we were alone".
Even worse that the physical abuse is the devastating psychological effects of the treatment of these children by their "father". They are afraid of Charles L. and believe that he used to hurt them because they
were bad. If they are not rescued from this situation, they are destined to the same fate of their mother, who stated the following in her statement to the Manchester Police Department:
 "Today after you all left our place. He said everything was my fault. I was trying to get help. He said I was no good, I amount to nothing, he was yelling. After you left his mother came and he was yelling at her. He said I would have been better off six feet under the ground. He said I should be happy I'm not six feet under the ground and I should be lucky about that. I felt threatened in a way, he's right. My husband said that also, so why shouldn't it be true". (Emphasis added)
CT Page 12323 There is no question that the State has established by an overwhelming preponderance of evidence that these children have been permitted to live under injurious conditions, circumstances, and associations; and have been denied proper care and attention. The Court finds credible the evidence relied on by petitioner and the attorney for the children and adopts that evidence in adjudicating Nila L., Maria C., Jayson C. and Edward C. as neglected children.
Patricia Lilly Harleston, Judge