******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NORTHEASTERN CONNECTICUT COUNCIL OF GOVERNMENTS ANIMAL SERVICES EX REL. JENNIFER HUTCHINS *v.* TRACY DONOVAN
## (AC 48462)

Seeley, Wilson and Flynn, Js.

*Syllabus*

The defendant appealed from the trial court's judgment in an animal welfare proceeding brought pursuant to statute (§ 22-329a) that vested ownership of certain neglected animals in the plaintiff. The animals were seized pursuant to a warrant issued after an animal control officer viewed the conditions of the defendant's premises through a window during a welfare check. The defendant claimed, inter alia, that the court improperly denied her motion to suppress evidence procured by the search and seizure warrant as the fruit of the poisonous tree under the exclusionary rule because the judicial finding of probable cause for the warrant rested in part on the animal control officer's affidavit detailing observations she made by peering through the window and that such observations constituted an improper search of the curtilage of the defendant's home, which did not meet the plain view exception to the fourth amendment's warrant requirement. *Held*:

The trial court properly denied the defendant's motion to suppress the evidence obtained as a result of the initial animal welfare check of the defendant's premises and arguably any other evidence obtained under the later search warrant, which was its fruit, as the exclusionary rule does not apply in a proceeding brought pursuant to § 22-329a because the minimal deterrent effect of applying the exclusionary rule was substantially outweighed by the societal interest in having otherwise reliable and relevant evidence concerning animal neglect and cruelty presented at an animal welfare proceeding seeking to remove the animals from such circumstances.

The trial court did not abuse its discretion when it took judicial notice of the transcripts of a prior temporary custody hearing, as the court's taking of judicial notice was not improperly premised on a misapplication of § 2-1 of the Connecticut Code of Evidence, which permits courts to take judicial notice of facts not subject to reasonable dispute in the files of the trial court in the same or other cases, and the record did not support the defendant's contention that the court presumed the truth of certain testimony presented at the prior hearing and used it as a basis for its decision granting permanent ownership of the animals to the plaintiff.

Argued January 15—officially released March 10, 2026

*Procedural History*

Verified petition seeking, inter alia, custody in favor of the plaintiff of certain animals in the defendant's

possession that allegedly were neglected or cruelly
treated, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the
court, *Cobb, J.*, issued an order vesting temporary cus-
tody of the animals with the plaintiff; thereafter, the
court, *Chadwick, J.*, denied the defendant's motion to
suppress certain evidence and issued an order vesting
temporary custody of the animals with the plaintiff;
subsequently, the case was tried to the court, *Baio, J.*;
judgment vesting permanent ownership of the animals
with the plaintiff, from which the defendant appealed
to this court. *Affirmed*.

*Christopher T. DeMatteo*, for the appellant (defen-
dant).

*Thomas A. Plotkin*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant, Tracy Donovan, appeals
from the judgment of the trial court vesting permanent
custody with the plaintiff, Northeastern Connecticut
Council of Governments Animal Services ex rel. Jennifer
Hutchins, of various animals owned by the defendant.
The defendant raises two claims on appeal. The first
claim is that the exclusionary rule, which bars the use
of evidence seized without a warrant in violation of the
fourth amendment to the United States constitution,
applies in a civil proceeding commenced under General
Statutes § 22-329a seeking temporary and permanent
custody of certain animals alleged to have been neglected
and uncared for. The second claim is that the trial court
improperly took judicial notice of earlier proceedings.
We disagree with these claims and affirm the judgment
of the trial court.

The following facts and procedural history are relevant
to this appeal. The defendant is the owner of a single-
family residence in Woodstock, at which property she
resided along with ninety-six dogs, two goats, two exotic
birds, two cats, and one rabbit. Following numerous

complaints concerning the animals on the property, an animal control officer, Jennifer Hutchins, conducted a welfare check. Upon arriving at the property, the animal control officer observed that the property was in an unsanitary state and the house emitted an overwhelming odor of urine and feces. After knocking on the front and rear doors of the house and receiving no answer other than the sound of twenty to thirty dogs barking, some sounding distressed, the animal control officer peered through a window and observed numerous small dogs in cages and crates, together with several underweight and extremely dirty dogs running about the residence. These observations of the animal control officer served as a basis for an affidavit submitted in support of an application for a search and seizure warrant for the defendant's property, which warrant was granted by a judge of the Superior Court. On July 10, 2024, the animals were seized by the plaintiff pursuant to the warrant.[1]

On July 23, 2024, the plaintiff filed a verified petition seeking permanent ownership of the animals pursuant to § 22-329a (c),[2] as well as an application for an immediate ex parte order of temporary care and custody. The court, *Cobb, J.*, granted the application for an immediate ex parte order of temporary care and custody the following day and ordered a hearing to be held on August 5, 2024,

[1] General Statutes § 22-329a (b) provides in relevant part that "[a]ny animal control officer or regional animal control officer . . . may take physical custody of any animal upon issuance of a warrant finding probable cause that such animal is neglected or is cruelly treated in violation of section 22-366, 22-415, 53-247, 53-248, 53-249, 53-249a, 53-250, 53-251, 53-252 or 53a-73b, and shall thereupon proceed as provided in subsection (c) of this section . . . ."

[2] General Statutes § 22-329a (c) provides: "Such officer shall file with the superior court which has venue over such matter or with the superior court for the judicial district of Hartford at Hartford a verified petition plainly stating such facts of neglect or cruel treatment as to bring such animal within the jurisdiction of the court and praying for appropriate action by the court in accordance with the provisions of this section. Upon the filing of such petition, the court shall cause a summons to be issued requiring the owner or owners or person having responsibility for the care of the animal, if known, to appear in court at the time and place named."

at which the defendant had to show cause as to why the order of temporary care and custody should not continue.

At the commencement of the August 5, 2024 hearing, counsel for the defendant made an oral motion to suppress evidence, arguing that the subject search and seizure warrant was invalid due to the warrantless search of the premises conducted by an animal control officer peering through a window during a welfare check. The defendant filed a memorandum in support of her motion to suppress and dismiss on August 7, 2024. The court, *Chadwick, J.*, denied the motion to suppress on August 14, 2024, reasoning that the search and seizure warrant was valid because the animal control officer was not within the building or its curtilage at the time of his observations but, rather, the conditions as viewed through the window fell within the plain view exception to the fourth amendment warrant requirement.

After the hearing on August 5, 2024, which continued on August 13, 2024, the court, *Chadwick, J.*, issued an August 14, 2024 order vesting temporary custody of the animals with the plaintiff.[3] In concluding that the defendant neglected the animals and treated them cruelly, the court made the following factual findings. All ninety-six dogs were flea ridden, with many displaying long matted and filthy fur (including urine and feces), and some dogs displaying hair loss, dehydration, overgrown nails, and urine scalding. Many of the dogs

---

[3] General Statutes § 22-329a (d) provides in relevant part: "If physical custody of an animal has been taken pursuant to subsection (a) or (b) of this section and it appears from the allegations of the petition filed pursuant to subsection (c) of this section and other affirmations of fact accompanying the petition, or provided subsequent thereto, that there is reasonable cause to find that the animal's condition or the circumstances surrounding its care require that temporary care and custody be immediately assumed to safeguard its welfare, the court shall either (1) issue an order to show cause why the court should not vest in some suitable state, municipal or other public or private agency or person the animal's temporary care and custody pending a hearing on the petition, or (2) issue an order vesting in some suitable state, municipal or other public or private agency or person the animal's temporary care and custody pending a hearing on the petition. . . ."

were kept in crates, in some instances holding as many as two, three, or four dogs, without proper water or food. At the rear of the residence, there were two thin and lethargic goats in a small shed, which contained approximately three inches of wet goat feces and shavings and the two small water bowls in the area were dry and caked with dirt. Two exotic birds were in cages with no food or water. They had overgrown beaks and nails, with one being underweight and having plucked away some of its feathers. The two cats were covered in fleas, without access to water, food, or a litter box. The rabbit was a wild animal that the defendant improperly took into her possession and control. The defendant allowed the residence to be riddled with animal feces and shavings, and the residence was not properly ventilated, resulting in a noxious odor that could be detected many feet from the exterior of the residence. The defendant did not provide the animals with adequate food or water. The defendant did not provide the animals with necessary or proper care, including veterinary care.

The order of temporary care and custody required the defendant to relinquish ownership of her animals or post a surety or cash bond with the plaintiff and to pay all the expenses incurred by the plaintiff for caring for the animals at the rate of $15 per animal, per day.[4] The order also required the defendant to pay all veterinary expenses incurred. Thereafter, the plaintiff filed a motion for order of permanent ownership.

Subsequently, a hearing was held on January 7, 2025, concerning the plaintiff's petition seeking permanent custody of the animals. Prior to that hearing, the plaintiff filed a motion for order of judicial notice, seeking to have Judge Baio take judicial notice of the exhibits,

[4] General Statutes § 22-329a (f) provides in relevant part: "If the court issues an order vesting the animal's temporary care and custody in some suitable state, municipal or other public or private agency or person, the owner or owners shall either relinquish ownership of the animal or post a cash bond with the agency or person in whom the animal's temporary care and custody was vested or with such agency's counsel of record in the case. . . ."

testimony, and transcripts of the August 5 and 13, 2024 temporary custody proceedings and Judge Chadwick's attendant factual findings and legal conclusions. The defendant filed an objection. Judge Baio granted the motion.

At the January 7, 2025 hearing, Judge Baio restated that judicial notice was being taken of the proceedings, evidence and findings from the initial show cause hearing that resulted in an order vesting temporary custody with the plaintiff.

Relying on an amended affidavit of Hutchins, which the plaintiff filed in connection with the permanent ownership hearing, as well as the materials from the prior proceeding concerning temporary custody of which judicial notice had been taken, the plaintiff rested. The only witness to testify at the hearing was the defendant.

Following the hearing, Judge Baio issued a January 24, 2025 memorandum of decision vesting permanent ownership of the animals with the plaintiff. The court noted that, of the remaining eighty-one animals,[5] the defendant only posted bond for forty-four animals. The court determined that permanent ownership of the animals for which bond had not been posted vested with the plaintiff. Regarding the forty-four animals for which bond had been posted, the court determined that the plaintiff met its burden of proving neglect or cruelty by a fair preponderance of the evidence and that the defendant failed to show cause why permanent ownership should not vest with the plaintiff. The court also ordered the defendant to pay $226,775, representing the $15 per day cost for each of the animals from the July 10, 2024 seizure through the date of the order vesting permanent ownership. This appeal followed.

[5] Of the 103 animals seized, the defendant eventually surrendered sixteen dogs to the plaintiff, two of which were thereafter humanely euthanized. A total of seven dogs were humanely euthanized due to their poor health condition. The defendant also surrendered the rabbit, which was found to be a wild animal that the plaintiff had taken into her possession.

## I

The defendant claims that the court, *Chadwick, J.,* improperly denied her motion to suppress evidence procured by a search and seizure warrant as the fruit of the poisonous tree under the exclusionary rule. She contends that the judicial finding of probable cause for the search and seizure warrant rested in part on an affidavit detailing observations made by an animal control officer who peered through a window of her home during a welfare check and that such observation constitutes an improper search of the curtilage of her home, which does not meet the plain view exception to the fourth amendment's warrant requirement. The plaintiff counters that the exclusionary rule does not apply in a proceeding brought under the animal welfare statute, § 22-329a. We agree with the plaintiff.

We begin by setting forth the applicable standard of review. When reviewing the trial court's denial of a motion to suppress, our review of the court's findings of fact is limited to deciding whether factual findings were clearly erroneous and our review of the court's conclusions of law are subject to plenary review. *State* v. *Joseph E.*, 231 Conn. App. 556, 562, 333 A.3d 522, cert. denied, 351 Conn. 927, 333 A.3d 1108 (2025).

In *State ex rel. Dunn* v. *Connelly*, 228 Conn. App. 458, 325 A.3d 1159, cert. denied, 350 Conn. 933, 327 A.3d 386 (2024), cert. denied,    U.S.    , 146 S. Ct. 119, L. Ed. 2d (2025), this court addressed for the first time the issue of whether animal welfare proceedings conducted pursuant to § 22-329a are subject to the exclusionary rule. Id., 484. *Connelly*, which arises out of facts somewhat similar to those in the present case, involved a warrantless search,[6] wherein an animal control officer visited

---

[6] Unlike the present case, where an animal control officer peered through a window of the defendant's home while conducting a welfare check, *Connelly* involved a warrantless entry of a private residence. The court in *Connelly* emphasized that, "in the absence of imminent harm to an animal, the typical procedure as set forth under § 22-329a (b) for an animal control officer to enter a premises is by first obtaining a warrant." *State ex rel. Dunn* v. *Connelly*, supra, 228 Conn. App. 503–504.

the animal owner's property and made observations that became the basis for a search and seizure warrant for various animals on the property. Id., 460–61. The defendant in *Connelly* claimed that the trial court improperly denied her motion in limine to exclude evidence from the warrantless search of her property, arguing that the exclusionary rule applies to animal welfare proceedings. Id., 473–75.

This court in *Connelly* began its analysis with the following legal principles concerning the exclusionary rule. The plain text of the fourth amendment protects the right to be free from "unreasonable searches and seizures," but it is silent about how this right is to be enforced, and thus the United States Supreme Court created the exclusionary rule, which bars the prosecution from introducing evidence obtained by way of a fourth amendment violation as the fruit of the poisonous tree. Id., 476–77. The exclusionary rule is not constitutionally mandated; rather, it is a prudential rule formulated not to cure an invasion of rights already suffered but to deter future fourth amendment violations, thereby effectuating the guarantee of the fourth amendment against unreasonable searches and seizures. Id. The need for deterrence and the rationale for excluding evidence pursuant to the exclusionary rule is strongest where governmental unlawful conduct would result in the imposition of a criminal sanction on the subject of the search. Id., 479. As a general rule, the exclusionary rule does not apply to civil cases, although it has been applied beyond the confines of criminal cases in a proceeding for forfeiture of an article used in violation of the criminal law. Id., 480.

"United States Supreme Court precedent regarding the exclusionary rule's use in civil cases can be succinctly summarized as follows: it only applies in forfeiture actions when the thing being forfeited as a result of a criminal prosecution is worth more than the criminal fine that might be assessed. That's it." (Internal quotation marks omitted.) Id., 483. The exclusionary rule,

however, may be extended to civil cases where the likely social benefits of excluding unlawfully seized evidence outweigh the likely costs.[7] Id., 481, citing *United States* v. *Janis*, 428 U.S. 433, 446, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976).

This court in *Connelly* determined that the exclusionary rule does not apply to animal welfare proceedings brought pursuant to §22-329a because such proceedings do not constitute a civil forfeiture nor are such proceedings quasi-criminal in nature as the statute is not punitive. *State ex rel. Dunn* v. *Connelly*, supra, 228 Conn. App. 485–97. Lastly, this court determined that the exclusionary rule should not be extended to animal welfare proceedings because the harm caused by a warrantless search does not outweigh the potential harm from allowing animals to remain in a setting where they were being neglected or cruelly treated. Id., 503.

There is no dispute that *Connelly* controls. At oral argument before this court, the defendant's appellate counsel conceded that *Connelly* controlled the present claim that the exclusionary rule applies in animal welfare proceedings so as to exclude all evidence obtained from a warrantless search of the premises.

For all of these reasons, whether the initial warrantless search of the premises occurred within the curtilage or not, we conclude that the trial court properly denied the defendant's motion to suppress the evidence of the initial animal welfare check of the defendant's premises and arguably any other evidence obtained under the later

---

[7] "[I]f a proceeding is identified as quasi-criminal, we have treated that as determinative of whether the exclusionary rule applies *without* requiring consideration of the *Janis* balancing test. . . . In Connecticut, few proceedings are deemed to be quasi-criminal, and they include (1) forfeiture proceeding[s] intended to penalize . . . for the commission of a criminal offense . . . (2) attorney disciplinary proceedings . . . and (3) juvenile delinquency proceedings." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State ex rel. Dunn* v. *Connelly*, supra, 228 Conn. App. 483–84; see *United States* v. *Janis*, 428 U.S. 433, 454, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976).

search warrant, which was its fruit.[8] The circumstances in the present case mirror the circumstances in *Connelly*. Guided by *Connelly,* we are persuaded that the minimal deterrent effect of applying the exclusionary rule in the present case is substantially outweighed by the societal interest in having otherwise reliable and relevant evidence concerning animal neglect and cruelty presented at an animal welfare proceeding seeking to remove the animal from such circumstances. See id.

## II

The defendant next claims that Judge Baio improperly took judicial notice of testimony presented at the August, 2024 temporary custody hearing before Judge Chadwick. We are not persuaded.

At the outset, the defendant acknowledges that evidentiary claims, such as those involving the taking of judicial notice, are generally reviewed under an abuse of discretion standard. See, e.g., *Scalora* v. *Scalora*, 189 Conn. App. 703, 713, 209 A.3d 1 (2019) ("trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review" (internal quotation marks omitted)). She contends, however, that a plenary review standard applies because the termination of her ownership of her animals constitutes a deprivation of property implicating constitutional due process protection. We are not persuaded.

Although "animals are generally . . . regarded as personal property . . . animals enjoy a unique status in our society as opposed to typical personal property . . . [and] they are subject to statutory welfare protections that place them in a category separate from inanimate

---

[8]We note that the court, in denying the defendant's motion to suppress and in concluding that the warrant was valid, found that the animal control officer was not within the building or its curtilage at the time of her observations, which were made in plain view. We do not address the issue of whether the plain view exception to the warrant requirement applies because our analysis is controlled by the holding in *Connelly* that the exclusionary rule does not apply to animal welfare proceedings.

property." (Citations omitted; internal quotation marks omitted.) *State ex rel. Dunn* v. *Connelly*, supra, 228 Conn. App. 485 n.24. Additionally, the purpose of animal welfare actions brought pursuant to § 22-329a is not to punish the owner, but rather it is to protect the health and safety of animals. Id., 496–97. Accordingly, the vesting of permanent ownership of animals pursuant to § 22-329a does not involve the deprivation of personal property of the owner, but the protection of the welfare of animals, and, therefore, the defendant cannot prevail on her argument that a plenary review standard applies.

Our standard of review, therefore, is as follows. "A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . In reviewing a trial court's evidentiary ruling, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently . . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, supra, 189 Conn. App. 713.

The defendant's argument focuses solely on the court's taking of judicial notice of the transcripts from the two day temporary custody hearing. She contends that Judge Baio misapplied § 2-1 (c) of the Connecticut Code of Evidence,[9] which permits a court to take judicial notice of facts not subject to reasonable dispute, by improperly taking judicial notice of disputable testimony presented at the two day temporary custody hearing before Judge Chadwick, thereby depriving her of her right to a fair

[9] Section 2-1 of the Connecticut Code of Evidence provides in subsection (b) that a court may take notice of matters of fact in accordance with subsection (c), which provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration."

trial.[10] She argues that, "[i]n taking judicial notice of the previous testimony [before Judge Chadwick] and using it as a basis for its decision, rather than just noting that it was made, the trial court (*Baio, J.*) effectively presumed that it was true. The defendant was not able to cross-examine those witnesses in the later hearing, which could have caused the trial court, who would have been hearing and observing those witnesses for the first time, to make different credibility determinations and findings of fact."

First, Judge Baio's decision to take judicial notice of the earlier proceeding before Judge Chadwick does not reflect a misapplication of §2-1 (c) of the Connecticut Code of Evidence. Although the plaintiff cited both §2-1 of the Connecticut Code of Evidence and the common-law rule concerning judicial notice in its motion for order of judicial notice, there is no indication from the court's granting of the motion or comments at the January 7, 2025 hearing which ground formed the basis of its decision. The defendant did not request an articulation pursuant to Practice Book §66-5. On the scant record before us, we conclude that the court's taking of judicial notice was not improperly premised on a misapplication of §2-1 of the Connecticut Code of Evidence. It is well established that courts may take judicial notice of files of the trial court in the same or other cases. See, e.*g.*, *Roger B.* v. *Commissioner of Correction*, 190 Conn. App. 817, 851 n.18, 212 A.3d 693, cert. denied, 333 Conn. 929, 218 A.3d 70 (2019), and cert. denied, 333 Conn. 929, 218 A.3d 71 (2019).

Second, the record does not support the defendant's contention that Judge Baio presumed the truth of certain testimony presented at the prior hearing before Judge Chadwick and used it as a basis for granting permanent ownership. In the memorandum of decision concerning

---

[10]The claim is reviewable on appeal because it was raised by the defendant's filing of a written objection to the plaintiff's motion for judicial notice, which was overruled by Judge Baio. The defendant orally, again, objected to the court taking judicial notice of the testimony on January 7, 2025, and, again, Judge Baio overruled that objection.

permanent ownership, Judge Baio adopted the findings set forth in Judge Chadwick's August 14, 2024 order of temporary custody, reasoning that those findings are supported by "the overwhelming evidence, which includes the numerous exhibits . . . ." Although the defendant does not contest Judge Baio's adoption of the findings of Judge Chadwick, as she only contests Judge Baio's taking judicial notice of transcripts from the earlier proceeding, we note that Judge Baio only did so after first determining that those facts were supported by the evidence. Compare *In re Mark C.*, 28 Conn. App. 247, 253–54, 610 A.2d 181 (it was not plain error when trial court did not base its decision solely on findings from earlier proceedings judicially noticed but merely took into consideration evidence from those earlier proceedings), cert. denied, 223 Conn. 922, 614 A.2d 823 (1992).

Judge Baio's decision was based, in large part, on photographic exhibits and the lack of credibility of the defendant's testimony at the show cause hearing concerning permanent ownership. Specifically, Judge Baio reasoned that the defendant "sought to downplay the notably poor condition of the animals as chronicled and depicted in the many exhibits, including the veterinary records and the multiple photographs. The defendant acknowledged that she was hiding dogs in her residence, that her animals had unplanned litters, that there was significant overcrowding with crates piled upon crates with clearly visible squalid conditions and observable poor conditions of the animals but testified that the animals were healthy and in good condition. She testified, contrary to the clear depiction in the exhibits, that the animals were well cared for and the animals and their accommodations within her home were not in poor condition. This testimony is not supported by the weight of the evidence, which paints a far more dire picture. The condition of the animals and their environment at the defendant's home prior to seizure are disturbing. The defendant's claim that the animals were healthy and properly cared for is just not supported by the evidence and is simply not credible."

Accordingly, Judge Baio's decision does not indicate that the truth of any testimony presented at the hearing on temporary custody was presumed. The defendant's counsel was not precluded from presenting her case or from calling witnesses other than the defendant. "Judicial notice relieves a party only of having to offer proof on the matter; [but] does not constitute conclusive proof of the matter nor is the opposing party prevented from offering evidence disputing the matter established by judicial notice." *In re Mark C.*, supra, 28 Conn. App. 252. In the absence of any evidence to the contrary, we presume that the court knew the law and applied it correctly. See, e.g., *In re Harlow P.,* 146 Conn. App. 664, 680, 78 A.3d 281, cert. denied, 310 Conn. 957, 81 A.3d 1183 (2013). Accordingly, we cannot conclude that the court's taking of judicial notice of the transcripts of the temporary custody hearing was an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.