# IN RE JAH'ZA G.*
## (AC 34817)

Beach, Bear and Espinosa, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 3—officially released February 7, 2013**

** February 7, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Alison P. Gaston*, for the appellant (respondent mother).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Eric J. Palladino*, for the minor child.

*Opinion*

BEACH, J. The respondent mother,[1] Latasza H., appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, J. On appeal, the respondent claims that (1) the court erred in granting certain motions filed by the petitioner, the commissioner of children and families (commissioner), relating to judicial notice and collateral estoppel, (2) the court made clearly erroneous factual

---

[1] The petitioner, the commissioner of children and families, instituted this termination proceeding against both the mother and the father of the child, naming both as respondents. Only the mother has filed this appeal and, for simplicity, all references to the respondent are to the mother.

findings, (3) she received ineffective assistance of trial counsel and (4) the court erred in denying her motion to open the judgment. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The termination of the respondent's parental rights with respect to J stems from incidents involving J's older sibling, R. In May, 2009, before J was born, the respondent took R, who was then three and one half months old, to a hospital emergency room, where it was determined that R had fractures of the left tibia and left femur. A board certified pediatric emergency physician, who had examined R, determined that the respective fractures could not have been self-inflicted but likely were caused at two different times by someone who twisted R's left leg and shook R. The commissioner invoked a ninety-six hour hold on R. See General Statutes § 17a-110g. In a written statement given to the police in June, 2009, the respondent stated that she shook R because she was frustrated that R's father had left her alone to care for R, and that on a separate occasion, during the course of an argument with the father, as the respondent went "to stomp out of" the room, she "banged into the doorway" with the arm in which she was holding R. With respect to these incidents, the respondent, in October, 2009, entered a guilty plea under the *Alford* doctrine[2] to assault in the second degree and risk of injury to a child. The respondent was sentenced to five years incarceration, execution suspended, and three years probation. In

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit [her] guilt . . . but consents to being punished as if [she] were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against [her] is so strong that [she] is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 558 n.2, 941 A.2d 248 (2008).

December, 2009, R was adjudicated neglected and committed to the custody of the commissioner.

On the day in March, 2010, that J was born, the commissioner invoked a ninety-six hour administrative hold on J on the theory of predictive neglect based on the nonaccidental injuries that had been sustained by R. Three days later, the commissioner obtained an order of temporary custody of J and filed a neglect petition. Specific steps were ordered for the respondent, which included engaging in counseling; the respondent signed the form outlining the steps. The commissioner filed an amended petition for termination of the respondent's parental rights with respect to J, pursuant to General Statutes § 17a-112 (j) (3) (B) (i) and (E). Following the respondent's plea of nolo contendere, J was adjudicated neglected and committed to the custody of the commissioner on December 6, 2010. Final specific steps were issued by the court, *Baldwin, J.*, to the respondent; the steps included engaging in counseling with the identified goals of developing stronger parenting skills, addressing anger issues and child safety.

On September 20, 2011, the court, *Epstein, J.*, terminated the respondent's parental rights with respect to R (sibling decision). On June 13, 2012, the court, *Eschuk, J.*, terminated the respondent's parental rights with respect to J. This appeal, which concerns the court's termination of the respondent's rights with respect to J, followed. Additional facts will be set forth as necessary.

I

The respondent first claims that the court erred in granting the commissioner's motion to take judicial notice of the sibling decision and in granting the commissioner's motion in limine.[3] We disagree.

[3] The respondent also claims that the court's application of judicial notice and collateral estoppel to the cause of R's injuries violated her right to due process under the fourteenth amendment to the United States constitution.

As to the first motion in question, on November 21, 2011, the commissioner filed a motion requesting the court to take judicial notice of the entire court file in the sibling case. The court granted the commissioner's motion. As to the second motion, on November 21, 2011, the commissioner filed a motion in limine seeking to have the court bar evidence contesting the following factual findings from the sibling decision: R suffered multiple nonaccidental injuries; the respondent inflicted those injuries; and the respondent had failed, in the child protection context, to accept responsibility for those injuries. The court granted the motion as to the finding that the respondent inflicted nonaccidental injuries on R.[4]

In its June 13, 2012 decision, the court stated that it was taking "judicial notice of the following findings made by Judge Epstein [in the September 20, 2011 decision]: 1. That [R] suffered serious physical injuries . . . 2. That [R's] injuries were caused by the acts of the respondent . . . 3. That (as of May 11, 2011) [the respondent] has not been able to focus on the threshold issue [of assuring] the safety of [R] necessary for effective treatment and permitting reunification. [The

She seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Her claim is not reviewable pursuant to *Golding* because it is not of constitutional magnitude. "The doctrine of collateral estoppel is a judicially created rule of reason that is enforced on public policy grounds. . . . The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . As a general rule, [a]pplication of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated." (Citations omitted; internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 482, 853 A.2d 478 (2004). There is no constitutional right to disregard common-law limitations on the doctrine of collateral estoppel. See *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 615, 851 A.2d 320, cert. denied, 271 Conn. 909, 859 A.2d 561 (2004).

[4] The court also granted the motion as to findings regarding the respondent's rehabilitation prior to the termination of parental rights hearing regarding R.

respondent] has not addressed what happened to [R] and why." (Internal quotation marks omitted.)

## A

## Preservation

At a pretrial hearing on January 18, 2012, the court heard argument on the commissioner's motion to take judicial notice and motion in limine. The respondent argued that the court should not grant either motion on the ground of relevancy because the sibling decision involved a different child, R. The respondent, however, did not object on the grounds now raised on appeal.[5] On appeal, she raises multiple arguments regarding why the court improperly granted the motion to take judicial notice and motion in limine, none of which pertain to relevancy. "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court." (Internal quotation marks omitted.) *In re Soncheray H.*, 42 Conn. App. 664, 666, 680 A.2d 1363, cert. denied, 239 Conn. 940, 684 A.2d 712 (1996). "[T]o permit a party to raise a different ground on appeal than [that] raised during trial amounts to trial by ambuscade, unfair to both the trial court and . . . the opposing party. . . . Inasmuch as the defendant raises a claim on appeal different from the one that he raised at trial, he is not entitled to review of his claim." (Internal quotation marks omitted.) *Spears* v. *Elder*, 124 Conn. App. 280, 293–94, 5 A.3d 500, cert. denied, 299 Conn. 913, 10 A.3d 528 (2010).

The respondent, alternatively, seeks review for both claims under the plain error doctrine. Practice Book

[5] The respondent argues that her posttrial motion to open, which did raise the grounds on which she now appeals, preserved the issue. The motion to open was filed more than one year after the November 21, 2011 decision. A policy behind preservation, to avoid trial by ambuscade; see, e.g., *Spears* v. *Elder*, 124 Conn. App. 280, 293–94, 5 A.3d 500, cert. denied, 299 Conn. 913, 10 A.3d 528 (2010); would not be served if this posttrial motion to open served to preserve this claim.

§ 60-5. When reviewing a claim under the plain error doctrine, "[f]irst, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the [party seeking plain error review] simply to demonstrate that [her] position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . . In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 205, 982 A.2d 620 (2009).

B

## Motion to Take Judicial Notice

"Judicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed. . . . Judicial notice relieves a party only of having to offer proof on the matter; it does not constitute conclusive proof of the matter nor is the opposing party prevented from offering evidence disputing the matter established by judicial notice. . . .

The trial court has the power to take judicial notice of court files of other actions between the same parties." (Citations omitted; internal quotation marks omitted.) *In re Mark C.*, 28 Conn. App. 247, 252–53, 610 A.2d 181, cert. denied, 223 Conn. 922, 614 A.2d 823 (1992).

It is important at the outset to consider the analytical process. Technically, the court did not take judicial notice directly of the facts found in the sibling decision; that is, the court did not directly take judicial notice that the respondent caused R's injuries. Rather, analytically, the court took judicial notice directly of the sibling decision itself, which included factual findings, and then used the principle of collateral estoppel to prohibit the respondent from relitigating those facts.

The respondent argues that the court erred in taking judicial notice from the sibling decision of a "fact" that was not actually decided in the sibling decision, namely, that the respondent had caused R's injuries. She argues that the court, *Epstein, J.*, did not find in the sibling decision that the respondent caused R's injuries but, rather, that the decision was ambiguous as to the cause of R's injuries. The court in the sibling decision found: "[R's] injuries were not accidental, and, except for [the respondent's] statement to the police, no explanation has been provided for the child's severe injuries. Although [the respondent] has protested that the statement is not accurate, the statement was given voluntarily . . . and presents a credible explanation of the sequence of events, and causation. . . . [The commissioner] has proved by clear and convincing evidence that [R's] serious physical injuries were caused by the acts of [the respondent]." The court in the sibling decision explicitly found that the respondent caused R's injuries, and its finding is not ambiguous in this regard.[6]

---

[6] In support of her argument that the court's decision was ambiguous, the respondent notes the following quotation from the sibling decision: "Although at times [the respondent] has been cooperative, she has not consistently and timely attended programs and she has not acknowledged

The respondent further argues that the "fact" that she caused R's injuries does not fall within any category of facts under Connecticut Code of Evidence § 2-1 of which a court may take judicial notice. Section 2-1 (c) provides that a court may take judicial notice of facts that are "not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration." The commissioner did not rely specifically on § 2-1 in the motion to take judicial notice, and the court, in its decision and articulation did not rely on that section. Rather, in its articulation, the court made clear that it relied on the common-law principle that a court may take judicial notice of certain court records. It is well established that a court may "take judicial notice of the court files in another suit between the parties . . . ." *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990). The respondent does not challenge on appeal the court's ability to take judicial notice under this principle.

The respondent next argues that the court erred in taking judicial notice of facts in the sibling decision and by precluding the admission of contrary evidence. "Judicial notice relieves a party only of having to offer proof on the matter; it does not constitute conclusive proof of the matter nor is the opposing party prevented

either that she caused [R's] injuries and needs help herself or that someone else has caused these injuries . . . ." The court made this finding in the context of a discussion regarding the respondent's failure to rehabilitate. In this context, the court was not making findings regarding the cause of R's injuries, but rather the respondent's efforts at rehabilitation. The court in the sibling decision explicitly stated, in the context of its discussion regarding the commissioner's assertion that the respondent's parental rights as to R should be terminated on the basis of physical abuse, that the respondent's statement to the police regarding R's injuries presented a credible explanation of causation.

from offering evidence disputing the matter established by judicial notice." *In re Mark C.*, supra, 28 Conn. App. 252. The respondent's argument is misplaced because the court did not take judicial notice of facts from the sibling decision and give those facts preclusive effect. Rather, as noted previously, it took judicial notice of the sibling decision and then, in granting the commissioner's motion in limine, gave preclusive effect to certain facts from the sibling decision because of collateral estoppel. The respondent's argument, in this regard, will be discussed in part I C of this opinion.

The respondent additionally argues that the court erred in predicating its decision primarily on the judicially noticed fact that the respondent had inflicted[7] injuries on R. In support of her argument she cites the following quotation from *In re Mark C.*, supra, 28 Conn. App. 253: "It would be improper for the trial court to base its decision terminating the respondent's parental rights solely on findings from the earlier proceedings that were judicially noticed by the court." The court did not base its decision to terminate the respondent's parental rights regarding J solely on the ground that the respondent caused R's injuries, nor was judicial notice the sole basis of that fact. Rather, the basis for the court's decision was the respondent's failure to achieve a sufficient degree of personal rehabilitation. The court heard testimony from three witnesses called by the commissioner—J's foster mother, a forensic clinical psychologist and a social worker with the department of children and families (department); and six witnesses called by the respondent, including herself, her previous employer, her therapist, her probation officer, a case aide with the department and a parenting

---

[7] The factual conclusion in the sibling decision, which was also relied on here by virtue of collateral estoppel, was that the respondent "caused" injuries to R. This conclusion does not necessarily mean that the respondent directly "inflicted" those injuries.

coach. The court found that the respondent was put on notice that acceptance of her responsibility for R's injuries was a primary goal of her rehabilitation efforts and that her unwillingness to accept responsibility for causing R's injuries meant that she would not be able to engage in meaningful treatment to minimize the danger that a similar problem would occur if she were reunited with J.

We conclude that the court did not err in granting the commissioner's motion to take judicial notice. Accordingly, the respondent cannot prevail under the plain error doctrine.

## C

### Motion in Limine

The respondent argues that the court erred in granting the commissioner's motion in limine, thereby giving preclusive effect to the finding in the sibling decision that the respondent had caused R's injuries because the elements of collateral estoppel were not satisfied. "The fundamental principles underlying the doctrine of collateral estoppel are well established. The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Cumberland*

*Farms, Inc.* v. *Groton,* 262 Conn. 45, 58, 808 A.2d 1107 (2002).

The respondent's argument is premised on a perceived ambiguity in the sibling decision.[8] She argues that the cause of R's injuries was not "actually decided" in the sibling decision and that the determination of the cause of R's injuries was not "essential to the judgment" because the sibling decision was ambiguous as to the cause of R's injuries. As discussed in part I B of this opinion, the sibling decision is unambiguous as to the cause of R's injuries. The sibling decision contains a clear finding that the respondent caused R's injuries; this matter was actually decided and essential to the judgment.

The respondent next advances several policy based arguments for why collateral estoppel should not apply in the present case.[9] She notes that the doctrine of collateral estoppel "should be flexible and must give way when [a] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies"; (internal quotation marks omitted)

---

[8] The respondent also argues that the cause of R's injuries had not been fully and fairly litigated. This argument refers to evidence not in the record before us. The commissioner filed a motion to strike the portion of this argument that pertained to evidence outside the record, which we granted. Accordingly, we decline to review the claim.

[9] The respondent also argues that the court erred in precluding her from testifying as to the circumstances of her confession to the police regarding the cause of R's injuries. She states that preclusion of the rebuttal testimony was improper because the commissioner opened the door to rebuttal by her introduction of exhibit B, a social study in support of the termination of parental rights petition. The social study states that the respondent signed a confession detailing how she fractured R's legs but that the respondent "now states that she was pressured into the confession . . . ." When asked by her counsel why she signed the confession, the respondent answered that she was pressured; at this point, counsel for the commissioner objected. The respondent's counsel did not indicate that the answer was in rebuttal to exhibit B, but rather offered no argument in response to the objection.

*Weiss* v. *Weiss,* 297 Conn. 446, 460, 998 A.2d 766 (2010); and argues that the application of the doctrine in this case contravenes the important public policy of family integrity because the grounds for termination were not proven as to each child. The respondent's argument is based on the premise that the court based its decision to terminate her parental rights with respect to J entirely on the fact that she caused R's injuries. This premise is incorrect because the court required the commissioner to prove a failure to rehabilitate, and, as noted previously, the essential feature of the court's decision was failure to rehabilitate, not the fact of having caused the injuries.

The respondent argues that because her constitutional right to parent J is at stake, an exception to the doctrine of collateral estoppel should be made and, as a result, she should not have been precluded from litigating the cause of R's injuries in the present case. The fact that constitutional rights are at stake in a case is not a reason, in itself, not to apply the doctrine of collateral estoppel. The principles of collateral estoppel apply to criminal cases, where the defendant's liberty is at stake. See *State* v. *Wilson,* 180 Conn. 481, 486, 429 A.2d 931 (1980) (principles of collateral estoppel apply to criminal as well as to civil cases). Furthermore, collateral estoppel has been applied in child protection cases. In *In re Stephen M.,* 109 Conn. App. 644, 664–65, 953 A.2d 668 (2008), for example, we stated that on the basis of relevant constitutional rights and public policy reasons, "a trial court may not, in a subsequent proceeding, disregard and permit relitigation of, a factual or legal determination made or an issue decided in a prior proceeding. Such reconsideration . . . is unfair to the petitioner, who represents the state's parens patriae interest, as well as unfair to the respondent parents and the children." Although the sibling case and the present case involve different children, the same parties

were involved, and the issue of causation of R's injuries was fully and fairly litigated in the sibling case.

We conclude that the trial court did not err in granting the commissioner's motion in limine. Accordingly, the respondent cannot prevail under the plain error doctrine.

## II

The respondent claims that the court made the following clearly erroneous factual findings: (1) the department made reasonable efforts to reunify her with J; (2) she failed to achieve sufficient personal rehabilitation; and (3) termination of her parental rights was in J's best interest. We will consider each claim in turn.

Section 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed [for termination of parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and [the parent] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . [or] (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child

were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 190–91, 986 A.2d 351 (2010).

## A

### Reasonable Efforts

The respondent claims that the court erred in finding that the department had made reasonable efforts to reunify her with J. We are not persuaded.

"In order to terminate parental rights under § 17a-112 (j), the department is required to prove, by clear

and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) *In re G.S.*, 117 Conn. App. 710, 716, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009).

The court found the following additional relevant facts. The department's principal goal in referring the respondent to family services was for her to acknowledge her responsibility for R's injuries and to try to find ways, in a therapeutic setting, to mitigate any further injuries to her children. This goal was conveyed to the respondent. In therapy, the respondent avoided the issue of responsibility for R's injuries, despite having been repeatedly urged to do so by the social worker assigned to the case. The court found by clear and convincing evidence that the department had made reasonable efforts to reunite J with the respondent by offering counseling, case management, supervised visitation services and parenting education.

The respondent argues that it was not reasonable for the department to mandate that she acknowledge responsibility for R's injuries as a goal of rehabilitation

because there were no eyewitnesses to the alleged abuse and because she consistently denied the allegations of abuse. In arguing that reasonable efforts were not made, the respondent, essentially, is arguing that she did not cause R's injuries. She cannot prevail because that factual issue was decided in the sibling decision. As stated previously in part I C of this opinion, the court did not err in collaterally estopping her from relitigating the cause of R's injuries. The court's finding of reasonable efforts thus is not clearly erroneous. We conclude, therefore, that the court did not err in finding that the department offered the respondent multiple services aimed at reunification.

B

Failure to Rehabilitate

The respondent claims that the court erred when it found that she failed to achieve sufficient personal rehabilitation. We disagree.

"Section 17a-112 (c) (3) (B) requires the court to determine whether the degree of personal rehabilitation . . . encourage[s] the belief that within a reasonable time . . . such parent could assume a responsible position in the life of the child . . . . Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . . [A] trial court's finding that a parent has failed to achieve sufficient rehabilitation will not be overturned unless it is clearly erroneous . . . ." (Citations omitted; internal quotation marks omitted.)

*In re Tremaine C.*, 117 Conn. App. 590, 597, 980 A.2d 330, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).

In the portion of the memorandum of decision addressing the issue of the respondent's rehabilitation, the court found the following additional relevant facts. Although the respondent had done much of what was required of her in that she remained in therapy, acquired a home and employment, was doing well on probation, visited J consistently and established a good relationship with her, she had not sufficiently rehabilitated because she was unwilling to accept responsibility for causing R's injuries and, as a result, had not engaged in meaningful treatment that could minimize the danger of recurrence if reunited with J. The court found that the respondent had been given nearly two years since J's birth to acknowledge responsibility for R's injuries and to show that she had a real plan to avoid recurrence, but that she continued to avoid the issue and showed no indication that she would address it in the foreseeable future.

The respondent argues that the only thing that she had not done, by way of rehabilitation, was to accept responsibility for R's injuries. She states that the court erred in finding that she failed to rehabilitate on this basis because it is illogical to require her to admit something she did not do.

The court's finding that the respondent had failed to achieve sufficient rehabilitation is not clearly erroneous. The issue regarding cause of injury has been fully discussed; significantly, the court also found that the respondent "continues to avoid any meaningful discussion of what led to [R's] injuries in her therapy independent of any restrictions imposed by this court to avoid relitigating Judge Epstein's findings." The record supports the proposition that the respondent had not acted in such a way as to minimize any possibility that she

might similarly injure J. The court found credible the testimony of David Mantell, a forensic clinical psychologist, that the failure to accept responsibility prevents treatment of the underlying cause of the behavior and that, in the absence of appropriate treatment, the most reliable predictor of injury to a child in a family is a nonaccidental injury to another child. The court found that the respondent had been given ample indication of the importance of acknowledging responsibility for R's injuries, yet she had failed to accept responsibility and showed no sign of doing so in the future despite two years having passed since J's birth.

## C

### Best Interest of Child

The respondent claims that the court erred in finding that termination of her parental rights was in the child's best interest. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of [the respondent's] parental rights is not in the best interests of the child. In arriving at this decision, the court is mandated to consider and [to] make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The best interests of the child include the child's interest in sustained growth, development, well-being and continuity and stability of its environment. . . . As with the findings made in the adjudicatory phase, we reverse the court's determination of the best interest of the child only if the court's findings are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Albert M.*, 124 Conn. App. 561, 566, 6 A.3d 815, cert. denied, 299 Conn. 920, 10 A.3d 1050 (2010).

The respondent argues that the court erred in discounting the bond and love between her and J; that she

was not offered appropriate services; and reasonable efforts to reunify were not made because the services offered were premised on her admitting to having caused R's injuries. Again, the respondent cannot prevail on her argument because it is based on the proposition that she did not cause R's injuries. Regarding the bond between the respondent and J, "[o]ur courts consistently have held that even when there is a finding of a bond between parent and a child, it still may be in the child's best interest to terminate parental rights." *In re Rachel J.*, 97 Conn. App. 748, 761, 905 A.2d 1271, cert. denied, 280 Conn. 941, 912 A.2d 476 (2006). The court did not err in determining that it was in J's best interest to terminate the respondent's parental rights.

### III

The respondent next claims that she received ineffective assistance of trial counsel.[10] We disagree.

In *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979), our Supreme Court set forth the following standard for determining whether counsel has been ineffective in a termination proceeding: "The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law. . . . The [respondent] must, moreover, demonstrate that the lack of competency contributed to the termination of parental rights." (Citations omitted; internal quotation marks omitted.) "A showing of incompetency without a showing of resulting prejudice

---

[10] "In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. General Statutes § 45a-717 (b). Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." (Internal quotation marks omitted.) *In re Enrico S.*, 136 Conn. App. 754, 757 n.3, 46 A.3d 173 (2012).

. . . does not amount to ineffective assistance of counsel." (Internal quotation marks omitted.) *In re Matthew S.*, 60 Conn. App. 127, 132, 758 A.2d 459 (2000). "In making such a claim, it is the responsibility of the respondent to create an adequate record pointing to the alleged ineffectiveness and any prejudice the respondent claims resulted from that ineffectiveness." *In re Christopher C.*, 129 Conn. App. 55, 59, 20 A.3d 689 (2011). In the absence of findings by the trial court in this regard, we directly review the trial court record. See *In re Dylan C.*, 126 Conn. App. 71, 90–91, 10 A.3d 100 (2011).

The respondent argues that trial counsel was ineffective[11] for failing to object vigorously to the commissioner's motion to take judicial notice and the motion in limine in that he failed to file written objections to both motions and objected to both motions, at the January 18, 2012 hearing, only on the ground of relevance rather than with reference to the elements of judicial notice and collateral estoppel.[12] The respondent argues that

[11] The respondent further argues that the trial court had a duty, sua sponte, to raise the issue of trial counsel's ineffectiveness and take corrective action. She states that, at a minimum, the trial court should have canvassed her as to her satisfaction or dissatisfaction with trial counsel. The respondent has not demonstrated that trial counsel's actions with which she takes issue were ineffective. She has not provided any relevant case law, and we are aware of none, suggesting that, in this case, the court was obligated to canvass her. Nor would a client's dissatisfaction necessarily equate to ineffectiveness.

[12] The respondent also argues that trial counsel was ineffective for failing to object to the recharacterization in the commissioner's motion in limine of the finding in the sibling decision that R's injuries were "caused" by the acts of the respondent to a statement that she "inflicted" the injuries. She argues that the court in the sibling decision never found that she "inflicted" the injuries and, in fact, did not decide the cause of R's injuries. The court did not use the word "inflict"; rather, it stated that it took judicial notice of the finding from the sibling decision that R's injuries were "caused" by the respondent. As stated in part I B of this opinion, the court in the sibling decision explicitly found that the respondent caused R's injuries, and that finding is not ambiguous in this regard.

because the trial court's determination that she failed to rehabilitate was based on the premise that she failed to admit in therapy that she caused R's injuries, trial counsel's actions in failing vigorously to object to the commissioner's motion to take judicial notice and motion in limine was prejudicial.

The respondent has not overcome the presumption that trial counsel acted competently. It may have been reasonable strategy not to emphasize the injuries, but to try to assert the issue of lack of relevance. We will not speculate as to his strategy; it is sufficient to state that the presumption of competency in professional judgment has not been overcome. See *Smith* v. *Commissioner of Correction*, 116 Conn. App. 383, 391, 975 A.2d 751 ("[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by [trial] counsel is reasonable and is a result of the exercise of professional judgment . . . ." [Internal quotation marks omitted.]), cert. denied, 293 Conn. 925, 980 A.2d 912 (2009). As part I of this opinion makes clear, the court's decision regarding judicial notice and collateral estoppel was correct in any event. There is nothing in the record to support the respondent's argument that if counsel had objected on different grounds, the outcome would have been different.

The respondent also argues that trial counsel ineffectively cross-examined the commissioner's expert witness, Mantell. She contends that trial counsel failed to ask Mantell whether his opinion—that the failure of a parent to take responsibility for causing the injury of one child is a significant factor in predicting whether similar injuries will occur to a sibling—would change if the cause of the injuries to R were not actually determined and if the respondent's confession to the police had been coerced. There is no factual predicate for

hypothetical questions based on these allegations. As the fact from the sibling decision that the respondent caused R's injuries had been given preclusive effect, trial counsel's decision not to cross-examine Mantell regarding the cause of those injuries might reasonably be considered sound trial strategy and attempts to cross-examine on causation other than by the acts of the respondent may have been objectionable. Moreover, the respondent has not demonstrated that the outcome in this case would likely have been different if Mantell had been cross-examined regarding the cause of R's injuries, a matter about which he lacked any direct knowledge, in that the issue of causation of R's injuries had already been decided in the sibling decision and given preclusive effect.

The respondent also argues that trial counsel was ineffective in failing to present evidence that her statement to the police in which she admitted causing R's injuries was coerced. Again, the petitioner has not demonstrated that this tactic was other than sound trial strategy, especially in light of her additional admission to a department social worker that she had caused R's injuries; focusing on the prior injury rather than on rehabilitation may have been counterproductive. She also has not demonstrated that the outcome would have been different if this evidence had been introduced. In the sibling decision, the court noted that the respondent stated to the department that she was pressured into making the statement to the police but, nonetheless, found that R's injuries were caused by the respondent. The sibling decision did not base this finding solely on the respondent's statement to the police but also noted that she gave information identical to that in her police statement to a social worker with the department during a completely separate conversation. Even if the respondent proved that her statement to the police was coerced, the finding in the sibling decision that the

respondent caused R's injuries—which was also based on the respondent's statement to a department social worker—was given preclusive effect and would still stand.

## IV

The respondent's final claim is that the court erred in denying her motion to open the judgment. We disagree.

"The standard of review on a motion to open a judgment under Practice Book § 17-4 is whether the trial court abused its discretion." *Marut* v. *IndyMac Bank, FSB*, 132 Conn. App. 763, 771, 34 A.3d 439 (2012).

Following the June, 2012 decision of the court terminating her parental rights with respect to J, the respondent filed a motion to open the judgment, which the court denied. She argues, with little analysis, that the court erred in denying her motion to open in that it declined to consider her claims of ineffective assistance of counsel; denied the motion to open on the ground that the commissioner need not establish the cause of R's injuries; determined that the respondent already had opportunities to contest the cause of R's injuries; and did not mention exceptions to collateral estoppel or other arguments provided by the respondent. After reviewing the court's ruling on the motion to open, we conclude that it did not abuse its discretion in denying the motion.

The judgment is affirmed.

In this opinion the other judges concurred.