IN RE PAUL O.*
(AC 35082)

Beach, Alvord and Pellegrino, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 5—officially released March 8, 2013**

*Michael D. Day*, for the appellant (respondent father).

*Frank H. LaMonaca*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Nhi Tran*, for the minor child.

*Opinion*

PER CURIAM. The respondent father appeals from the judgment of the trial court terminating his parental

** March 8, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

rights as to his minor child, Paul O.[1] On appeal, the respondent challenges as clearly erroneous the court's findings that (1) the department of children and families (department) made reasonable efforts to reunite the child with him and (2) the respondent was unwilling or unable to benefit from the department's services to facilitate his reunification with the child. We affirm the judgment of the trial court.

Certain facts and the procedural history are not in dispute. Paul was born in February, 2009. On November 5, 2009, the petitioner, the commissioner of children and families (commissioner), removed Paul from the mother's home on a ninety-six hour administrative hold because the living conditions in the mother's apartment posed a health and safety risk to him and were injurious to his well-being.[2] On November 9, 2009, the commissioner filed a neglect petition and sought an order of temporary custody of Paul. The court issued an ex parte order vesting custody of Paul in the department. On December 11, 2009, the court held a consolidated hearing to consider the order of temporary custody and the commissioner's neglect petition. The court sustained the order of temporary custody and adjudicated Paul neglected.

On May 24, 2011, following a contested disposition hearing, the court issued a memorandum of decision committing Paul to the department. Also on that date, the court approved a permanency plan for the termination of parental rights and adoption as to both parents

---

[1] The court also terminated the parental rights of the respondent mother in the same proceeding. Because the mother has not appealed the judgment, we refer to the father as the respondent in this opinion. We also note that the attorney for the minor child filed a statement adopting the brief of the petitioner in this appeal.

[2] At the time of the department's intervention, the respondent was living with his brother, and the mother had physical custody of Paul.

with a concurrent plan of reunification with the respondent. On July 21, 2011, the commissioner filed a termination of parental rights petition as to both parents. The commissioner subsequently moved to amend the petition; the court granted the motion on November 2, 2011. The commissioner also submitted a permanency plan of termination and adoption which the court approved on April 3, 2012.

The court conducted a trial on the petition for termination of parental rights on February 7, February 9, and May 16, 2012. On September 11, 2012, the court issued a memorandum of decision terminating the rights of both parents with respect to Paul. This appeal followed. Additional facts will be set forth as necessary.

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jah'za G.*, 141 Conn. App. 15, 30, 60 A.3d 392 (2013).

I

The respondent first challenges the court's finding that the department made reasonable efforts to reunite him with Paul. We are not persuaded.

The following additional facts and procedural history are relevant to our analysis of this issue. The court

ordered preliminary specific steps for the respondent, which required, inter alia, that he "participate in parenting classes and individual counseling to make progress towards the identified goal of his need to gain an understanding of the impact of mental health issues[3] and domestic violence[4] on children, not engage in substance abuse[5] and cooperate with recommended service providers for parenting skills, mental health and substance abuse treatment." The respondent did not sign or acknowledge the specific steps.

In concluding that the department made reasonable efforts to reunify the respondent with Paul, the court found that the department provided the respondent with "numerous services and specific and repeated referrals" to facilitate his reunification with Paul. Specifically, the department provided the respondent with weekly supervised visitation with Paul at the department and additional visits in the community, and also referred him to numerous providers for parenting classes, mental health services and alcohol abuse treatment. The department provided the respondent with bus passes to attend visits and services.

---

[3] The respondent indicated that he was diagnosed with schizophrenia when he was nineteen years old. He was hospitalized for two weeks in 2006 in a psychiatric unit. He was hospitalized for eight days in August, 2011, for depression and readmitted for depression for eleven days in October, 2011.

[4] The respondent reported that his relationship with Paul's mother was "very bad," that they argued all the time, and that she spit on him and he pushed her, shook her and kicked her once.

[5] As the court found, the respondent "has had problems in the past and continues to have a problem with alcohol abuse." The department referred him for outpatient substance abuse treatment in April, 2010. The respondent completed the treatment program in October, 2010, however, upon his release from his hospitalization in October, 2011, hospital staff recommended that he attend outpatient treatment for alcohol abuse. He attended counseling but left the program after the first day because he "didn't like it." During a psychological evaluation on November 22, 2011, the respondent indicated that he had been admitted to a transitional housing program, which requires him to take a daily Breathalyzer test in order to have a place to sleep.

"In order to terminate parental rights under [General Statutes] § 17a-112 (j), the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child . . . with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) *In re Jah'za G.*, supra, 141 Conn. App. 30–31.

The respondent contends that the court's reasonable efforts determination was clearly erroneous because the services provided by the department were not reasonable in light of his mental health issues. We do not agree.

Initially, the respondent contends that the court improperly failed to consider evidence that his mental health condition purportedly improved once he started taking injectable Risperdal and Zoloft.[6] According to the respondent, the evidence showed that this combination of medications made him "less anxious, less confused, more focused [and] a little bit more hopeful,"

[6] Risperdal is a medication used in the treatment of schizophrenia. See Physician's Desk Reference PDR.net: Risperdal Consta, available at http://www.pdr.net/drugpages/concisemonograph.aspx?concise=2662 (last visited March 8, 2013). The respondent began taking injectable Risperdal in October, 2011, and Zoloft in January, 2012.

and that the department's parental educational services were not being provided to him when his mental health condition improved. The commissioner contends, inter alia, that the court could not consider this evidence in its reasonable efforts determination because the relevant facts arose after the amendment of the petition for the termination of parental rights on November 2, 2011. We agree with the commissioner.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Shaiesha O.*, 93 Conn. App. 42, 47, 887 A.2d 415 (2006). When making its reasonable efforts determination during the adjudicatory phase, the court is limited to considering only those facts preceding the filing of the termination petition or the most recent amendment to the petition—here, November 2, 2011. See Practice Book § 35a-7 (a) ("[i]n the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights"); *In re Melody L.*, 290 Conn. 131, 148–49, 962 A.2d 81 (2009) (reasonable efforts finding is distinct from analysis of whether there exist grounds for termination of parental rights); *In re Shaiesha O.*, supra, 48–49 and 49 n.5 ("in determining whether the department has made reasonable efforts to reunify a parent

and a child . . . the court is required in the adjudicatory phase to make its assessment on the basis of events preceding the date on which the termination petition was filed"). Accordingly, the court's reasonable efforts analysis correctly focused only on facts occurring prior to the relevant adjudicatory date of November 2, 2011.[7]

Moreover, and in any event, the record does not support a claim that the services provided to the respondent prior to the adjudicatory date failed to take into account his mental health issues. Specifically, the respondent asserted at oral argument before this court that the trial testimony of Paulette Marcus, a parent educator who had worked with the respondent, suggested that the respondent's schizophrenia diagnosis did not impact her approach to the services and training she provided to him. In fact, however, Marcus testified that she was aware of the respondent's schizophrenia diagnosis and created an individualized program for him and, indeed, modified her training methods to account for his particular mental health status.

In short, after our careful review of the record, we cannot conclude that the court's reasonable efforts finding here was clearly erroneous. To the contrary, the record contains ample evidence supporting the court's conclusion that the department made reasonable efforts to provide the respondent with services and opportunities to facilitate his reunification with Paul, and accordingly, we reject the respondent's claim.

II

The respondent next contends that the court erred in finding that he was unwilling or unable to benefit

---

[7] To the extent the respondent asserts that the court assigned improper weight to certain testimony regarding his mental health issues and/or the purported progress he made after commencing his new medications, we decline to retry the facts or reweigh the evidence before the trial court, as that is not the function of this court on appeal. See, e.g., *In re Kamari C-L.*, 122 Conn. App. 815, 826 and n.12, 2 A.3d 13 (2010).

from the department's services to facilitate his reunification with Paul. The commissioner counters, inter alia, that we need not review this claim because upholding the court's finding as to reasonable efforts is sufficient to affirm the judgment. We agree with the commissioner.

Section 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, *unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . .*" (Emphasis added.) Interpreting this language, our Supreme Court has stated: "Because the two clauses [of § 17a-112 (j) (1)] are separated by the word 'unless,' this statute plainly is written in the conjunctive. Accordingly, the department must prove *either* that it has made reasonable efforts to reunify *or, alternatively,* that the parent is unwilling or unable to benefit from reunification efforts. Section 17a-112 (j) clearly provides that the department is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original.) *In re Jorden R.*, 293 Conn. 539, 552–53, 979 A.2d 469 (2009). Because we have concluded that the court properly found, on the basis of clear and convincing evidence, that the department had made reasonable efforts to reunify the respondent and Paul, we do not reach the respondent's claim that the court improperly concluded that he was unable or unwilling to benefit from reunification efforts. See, e.g., *In re Anvahnay S.*, 128 Conn. App. 186, 191, 16 A.3d 1244 (2011).

The judgment is affirmed.