IN RE KAMAL R.*
(AC 35080)

DiPentima, C. J., and Bear and Flynn, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 6—officially released April 3, 2013**

*Thomas F. Mitola*, for the appellant (respondent father).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Susan T. Pearlman* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Natasha White*, for the minor child.

*Opinion*

PER CURIAM. The respondent father[1] appeals from the judgment of the trial court terminating his parental

---

** April 3, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The petitioner, the commissioner of children and families, instituted this termination proceeding against both the mother and the father of the child, naming both as respondents. Only the father has filed this appeal, and, therefore, we refer in this opinion to the father as the respondent.

rights with respect to his son, Kamal R. On appeal, the sole issue is whether the court properly found that the department of children and families (department), had made reasonable efforts to reunite the respondent with Kamal. We conclude that the court's finding was proper and, therefore, we affirm the judgment of the trial court.

The court's memorandum of decision reveals the following facts and procedural history. Kamal was born in December, 2009. In February, 2010, the petitioner, the commissioner of children and families, invoked a ninety-six hour hold on Kamal,[2] followed by an order of temporary custody. In July, 2010, the court adjudicated Kamal neglected, and he was committed to the custody of the petitioner. In August, 2010, the department's permanency plan for Kamal changed from reunification with his parents to termination of their parental rights and adoption. The respondent eventually was served with the termination of parental rights petition, and he appeared at the plea date of January 17, 2012. Although his attorney was present, the respondent failed to attend the trial in May, 2012; he was defaulted, and the trial proceeded in his absence.[3] At the conclusion of the trial, the court granted the petition and terminated the parental rights of the respondent and Kamal's mother. This appeal followed.[4]

In its memorandum of decision, the court noted that the respondent had an "extensive history with substance abuse." In March, 2010, after testing positive for marijuana and cocaine, the respondent failed to show up at an intensive outpatient treatment center where he had been referred. At that time, the department paid an outstanding $1000 electric bill on behalf of the respondent so that he would not lose his eligibility for

---

[2] See General Statutes § 17a-101g (e) and (f).

[3] See Practice Book § 35a-8.

[4] On February 14, 2013, the attorney for Kamal filed a statement in support of the petitioner's brief. See Practice Book § 67-13.

Section 8 housing. That same month, he hit Kamal's mother in the head with a chair and a beer bottle and pushed her down the stairs. This led to his conviction for assault in the second degree. While incarcerated, he participated in programs and services for substance abuse, relapse prevention, anger management and domestic violence. He had monthly visits with Kamal while incarcerated. The respondent left the halfway house in March, 2012, and has had no contact with Kamal since February, 2012. The respondent also failed to keep the department apprised of his whereabouts and did not attend or participate in the trial.

"In order to terminate a parent's parental rights under [General Statutes] § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3). . . . *In re Melody L.*, 290 Conn. 131, 148–49, 962 A.2d 81 (2009)." (Internal quotation marks omitted.) *In re Jason M.*, 140 Conn. App. 708, 719, 59 A.3d 902 (2013).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged

findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jah'za G.*, 141 Conn. App. 15, 30, 60 A.3d 392 (2013); see *In re Zowie N.*, 135 Conn. App. 470, 499–500, 41 A.3d 1056, cert. denied, 305 Conn. 916, 46 A.3d 170 (2012).

On appeal, the respondent challenges the court's finding that the department made reasonable efforts to reunify him with Kamal. Specifically, he argues that while he was incarcerated, and then at the halfway house, he participated in the services that were available and that the department did not offer him any additional services. He further contends that employees of the department failed to contact the service providers to determine if those programs were sufficient for his needs. Last, he claims that he only had minimal contact with employees of the department. In his brief, the respondent summarized the situation as follows: "In essence, the [respondent] was a lost figure in this matter and the department never made any efforts to determine the appropriateness of reunification with the [respondent] or give [the respondent] any direction as to what he needed to do relative to reunify with his minor child."

"[Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child . . . with the parents. *The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged,*

using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Emphasis added; internal quotation marks omitted.) In re Paul O., 141 Conn. App. 477, 482, 62 A.3d 637 (2013); In re Christopher L., 135 Conn. App. 232, 242, 41 A.3d 664 (2012).

The record supports the court's underlying findings and its ultimate determination that the department made reasonable efforts to reunify the respondent with Kamal. Specifically, the court noted the respondent's history with substance abuse and his failure to attend a program to which the department had referred him. The department paid an outstanding electric bill in the amount of $1000 so that the respondent would not lose his housing. While the respondent faults the department for not being more involved in his programs while he was incarcerated, we note that while he was in the custody of the department of correction, the department was unable to offer him services.[5] See In re Anvahnay S., 128 Conn. App. 186, 193, 16 A.3d 1244 (2011); In re Jermaine S., 86 Conn. App. 819, 838–39, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005); see also In re Roshawn R., 51 Conn. App. 44, 53, 720 A.2d 1112 (1998). We also note that the respondent was provided with the court-ordered specific steps necessary for reunification. Last, the respondent, following his release from the halfway house, has not had any visits with Kamal and failed to apprise the department of his whereabouts. The department surely cannot be

[5] The respondent did participate in similar services provided by the department of correction.

faulted for failing to make reasonable efforts when the respondent essentially has vanished from Kamal's life. See *In re Anvahnay S.*, supra, 194–95; see also *In re Natalia G.*, 54 Conn. App. 800, 807, 737 A.2d 506 (1999). We conclude, therefore, that the court's finding that the department made reasonable efforts to reunify the respondent with Kamal was not clearly erroneous. Accordingly, the court did not err in terminating his parental rights.

The judgment is affirmed.